UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA FIORENTINO, Individually and as Parent and Natural Guardian of JARED DARDEEN and CODY NONNENMACHER | : | |
| VS. | : | C.A. NO. 04-501 |
| THEODORE BROTHER | : | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE**

Now comes the defendant and moves in limine to exclude the introduction into evidence of the traffic citation issued to him as a result of the motor vehicle accident of September 24, 2003 on the following grounds:

1. The citation issued does not rise to the level of "relevant evidence" necessary for its admission, as it lacks any indicia of reliability;
2. Assuming, arguendo, that evidence of the citation is relevant, it should nevertheless be excluded because its probative value is substantially outweighed by the danger of unfair prejudice.

Grounds for said motion are more fully set forth in the memorandum of law attached hereto.

Respectfully submitted,
Defendant, Theodore Brother
By his attorneys,
HIGGINS, CAVANAGH & COONEY, LLP

Peter E. Garvey, Esq. #5330
123 Dyer Street
Providence, RI 02903
(401) 272-3500
Fax: (401) 273-8780

**CERTIFICATION**

I hereby certify that a I on this 5th ~~day~~ of October, 2005 a true copy of the within document was mailed to:

Peter P.D. Leach, Esq.
One Charles Street
Providence, RI 02904

Sara M. Cirella

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA FIORENTINO, Individually and as Parent and Natural Guardian of JARED DARDEEN and CODY NONNENMACHER | : | |
| VS. | : | C.A. NO. 04-501 |
| THEODORE BROTHER | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE**

## I FACTS

This action arises out of a motor vehicle accident which occurred on September 24, 2003 in the City of Warwick. The defendant, Theodore B. Brother (hereinafter "Brother") identified as operator #1 was operating his Lexus SUV vehicle westbound on Veterans Memorial Drive at the time of the collision. The plaintiff (hereinafter "Fiorentino") was also driving westbound on Veterans Memorial Drive at the time of the collision. **(Exhibit A, Warwick Police Report)**. Veterans Memorial Drive, at the point of the collision, runs one way from east to west. **(Exhibit B, copy of diagram from Officer Falcofsky's deposition)**. Officer Falcofsky issued violation number 01-203-03870 to Brother for Laned Roadway Violation, R.I.G.L. §31-15-11 at the scene of the accident. **(Exhibit A, Officer Falcofsky's narrative)**. On or about October 27, 2003, Brother paid the civil fine by mail **(Exhibit C)**.

## II ARGUMENT

### A. The Citation Issued to Brother Does Not Rise To The Level Of "Relevant Evidence" Necessary for its Admission, as it Lacks any Indicia of Reliability.

Pursuant to F.R.E. 104(a), Brother objects to the introduction into evidence of the citation issued to him by Officer Falcofsky and any reference to it, on the grounds that the citation does not

rise to the level of relevant evidence necessary for its admission pursuant to F.R.E. 401.[1] Specifically, Officer Falcofsky's decision to issue the citation to Brother lacks any indicia of reliability based on the reasons below.

**1. Officer Falcofsky issued the citation based on completely erroneous assumptions with respect to the travel of the vehicles prior to impact.**

The plaintiff testified at her deposition on June 21, 2005 **(Exhibit D)**. She testified that she was traveling home to North Kingstown from a group ride in Providence on her motor scooter. **(Depo. at pp. 60-61)**. She was traveling beside her friend, Richard Horton (hereinafter "Horton"), who was riding his own motor scooter at the time. She further testified that she was traveling south on Post Road past the airport when she and Horton merged onto the Post Road Extension. At the bottom of the Post Road Extension, she and Horton came to a stop at a red light in the same lane behind Brother. **(Depo. at p. 62)**. All three vehicles were in the same lane of traffic and she had been traveling behind Brother for "some time before the impact". **(Depo. at p. 64)**.

When the light at the bottom of the Post Road Extension turned green, all three drivers proceeded westbound in the third lane of traffic as depicted in Exhibit A. **(Depo. at pp. 66-67)**. The Post Road Extension merges onto Veterans Memorial Drive which has four lanes running one way, east to west. **(See Exhibit A)**.

The plaintiff testified that it was her intention to change lanes from her right to left, from lane three to lane two, in order to proceed south on Post Road to North Kingstown. **(Depo. at p. 70)**.

[1] F.R.E.: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

She further testified that she was between one and two scooter lengths behind Brother when she began her lane change. **(Depo. at p. 82)**. She claims that she began her lane change before the entrance to the Fleet Bank parking lot (now the Bank of America). She agreed that she was in lane number two for a matter of seconds before the impact. **(Depo. at pp. 94-95)**.

Richard Horton testified by deposition on March 29, 2005. **(Exhibit E)**. He too testified that he was traveling in the same lane with Fiorentino as they approached the traffic light at the bottom of the Post Road Extension. **(Depo. at p. 25)**. He testified that he and Fiorentino traveled behind Brother for upwards of three hundred (300) feet before they began their lane change from the right to left in order to proceed south to North Kingstown. **(Depo. at p. 33)**.

Horton acknowledged that he and Fiorentino were attempting to "pass" Brother's vehicle when "she [Fiorentino] just drove right into the side of him". **(Depo. at p. 43)**. Moreover, Horton acknowledged that Fiorentino and Brother were changing lanes at the same time when the collision occurred. **(Depo. at p. 43)**.

Officer Falcofsky testified at his deposition on June 3, 2005. **(Exhibit F)**. He was the officer in charge at the scene of the accident. He recalled speaking to Richard Horton at the scene but declined to take Mr. Horton's written statement. **(Depo. at p. 24)**. He acknowledged observing damage to the rear of Brother's vehicle at the scene. **(Depo. at p. 43)**.

Officer Falcofsky testified that he issued the citation to Brother for his alleged violation of R.I.G.L. §31-15-11(1). Specifically, Officer Falcofsky testified that he assumed Fiorentino had "established" herself in lane number two before the collision. **(Depo. at pp. 69-70)**. He admitted that no one had told him that Fiorentino was passing Brother at the time of the collision. **(Depo. at p. 70)**. He admitted that no one told him that Fiorentino was changing lanes to her left at the time

of the collision. **(Depo. at p. 71)**. More importantly, he testified that he did not know that Fiorentino had merged onto Veterans Memorial Drive from the Post Road Extension. **(Depo. at p. 71)**. Indeed, he assumed that Fiorentino had been traveling north on Post Road in lane number two before merging onto Veterans Memorial Drive. **(Depo. at pp. 71, 72 and 73)**.

Officer Falcofsky's assumptions are in direct contradiction to the testimony of Fiorentino and Horton, both of whom acknowledge that they were traveling behind Brother's vehicle on the Post Road Extension for some distance before all three merged onto Veterans Memorial Drive. Officer Falcofsky acknowledged that he issued the citation based on his conversations at the scene with Fiorentino, Horton and Brother. **(Depo. at p. 21)**. There is nothing in Brother's written statement to the police or his deposition testimony to the effect that Fiorentino had been traveling in lane number two northbound on Post Road, or that she had "established" herself in lane number two, before the collision.

More importantly, Officer Falcofsky admitted that he might not have issued a citation to Brother if he knew that all three vehicles were changing lanes at the same time; that is from the third lane into the second lane. **(Depo. at pp. 75, 76 and 77)**.

**2. Officer Falcofsky acknowledged errors in his written narrative with respect to statement allegedly attributed to Brother and independent witness, Niles Madsen.**

The hand written statement of independent witness, Niles Madsen (hereinafter "Madsen") is made a part of the police report **(Exhibit A)**. In his written statement, Madsen stated that he:

> ". . . observed the Lexus swerve into the first lane and pull into the parking lot **after** the Fleet Bank (Global Excellence Travel Agency)." (Emphasis added).

In the fourth paragraph of his narrative, however, Officer Falcofsky states that Madsen told him that he observed Brother's vehicle "swerve into the first lane of travel and then pull into the parking lot of the Fleet Bank". This is not what Niles Madsen told Officer Falcofsky. Mr. Madsen told Officer Falcofsky that Brother's vehicle pulled into the parking lot of the Global Excellence Travel Agency. Indeed, Officer Falcofsky acknowledged this discrepancy at his deposition.

Officer Falcofsky admitted to yet another mistake in his typed narrative. In the fifth and last paragraph of his typed narrative, Falcofsky attributes to Brother the following:

> " . . .Operator #1 (Theodore Brother) indicated that he was attempting to make a left turn into the parking lot and was in the proper lane to do so."

At his deposition, however, Officer Falcsofsky acknowledged that Brother did not actually state that he was not in the proper lane to make a left turn. Rather, Officer Falcofsky *concluded* that Brother was not in the proper lane to make a left turn.

Officer Falcofsky's erroneous assumptions coupled with the acknowledged mistakes in his typed narrative lead to only one reasonable conclusion; that Officer Falcsofsky issued the citation to Brother hastily and without performing a thorough investigation. Accordingly, the citation issued to Brother lacks the indicia of reliability necessary to rise to the level of admissible evidence. Therefore, evidence of the citation is irrelevant and inadmissible pursuant to F.R.E. 402.

**B. Assuming, Arguendo, That Evidence of the Citation Issued to Brother is Relevant, it Should Nevertheless Be Excluded Because Its Probative Value is Substantially Outweighed By the Danger of Unfair Prejudice.**

F.R.E. 403 provides that:

> "Although relevant, evidence may be excluded if its probative value

> is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Evidence of the citation issued to Brother cannot be introduced pursuant to F.R.E. 609 or R.I.G.L. §9-17-15 for the purpose of attacking Brother's credibility since a traffic violation does not rise to the level of a crime punishable by death or imprisonment in excess of one year and does not involve dishonesty or false statement. Accordingly, the only conceivable purpose for introducing into evidence the citation is to prejudice the jury on the issue of negligence.

Other jurisdictions have been loath to admit traffic citations into evidence. Hadley v. Maxwell, 27 P.3d 600, 603 (Wash. 2001) ("Most jurisdictions have refused to admit traffic misdemeanors in subsequent civil cases, let alone allow them to be the basis for collateral estoppel"); Briggeman v. Albert, 586 A.2d 15, 18 (quoting Note, Recent Cases, 74 Harv. L. Rev. 1452 (1960)) (" 'it is common experience that people plead guilty to traffic charges for reasons of expediency even though they may believe themselves innocent'") ; Thurmond v. Monroe, 636 N.E. 2d 544, 548 (Ill. 1994) ("Ultimately, the danger of unfair prejudice from a traffic conviction outweighs its probative value. A conviction conveys a deceptive sense of certainty to the jury in a civil case that is difficult to challenge."); State v. Gusman, 874 P. 2d. 1112, 1117 (Id. 1994) (Refusing to give collateral estoppel effect to license suspension hearings because they lack a full and fair opportunity to litigate); Park Lane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L. Ed. 2d. 552 (1979) (holding that the disincentive to vigorously contest cases with small or nominal damages at stake could be a reason not to apply collateral estoppel).

"Many states have shown great reluctance to admit traffic citations into evidence. In Idaho, traffic records are inadmissible for any reason by statute. Idaho Code §49-1202 (1994); . . ."

Hadley, 27 P. 3d at 604.

Brother is expected to testify that his primary residence at the time of the accident was in Naples, Florida and that he returned to Florida shortly after the accident. He is further expected to testify that he paid the $75.00 fine by mail rather than incurring the costs of traveling back to Rhode Island from Florida to contest the citation. Accordingly, under these circumstances, the Court should exercise its discretion and exclude the introduction into evidence of the citation issued to Brother and any reference to it, as its probative value is substantially outweighed by the danger of unfair prejudice.

Respectfully submitted,
Defendant, Theodore Brother
By his attorneys,
HIGGINS, CAVANAGH & COONEY, LLP

Peter E. Garvey, Esq. #5330
123 Dyer Street
Providence, RI 02903
(401) 272-3500
Fax: (401) 273-8780

**CERTIFICATION**

I hereby certify that a I on this 5th day of October, 2005 a true copy of the within document was mailed to:

Peter P.D. Leach, Esq.
One Charles Street
Providence, RI 02904